UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TIME WARNER CABLE OF NEW YORK CITY LLC, <br><br> Plaintiff, <br><br> – against – <br><br> INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL-CIO, LOCAL UNION NO. 3, and DEREK JORDAN, INDIVIDUALLY AND IN HIS CAPACITY AS BUSINESS AGENT OF LOCAL 3, <br><br> Defendants. | **MEMORANDUM & ORDER** <br><br> 14-CV-2437 <br><br> Related action <br> 15-CV-700 |

**Parties**

**Appearances**

<u>Plaintiff</u>

**Time Warner Cable of New York City LLC**

**Kenneth Alan Margolis**
**Daniel Kirschbaum**
Kauff McGuire & Margolis LLP
950 Third Avenue
15th Floor
New York, NY 10022-2075
212-644-1010
Email: margolis@kmm.com
Email: kirschbaum@kmm.com

<u>Defendants</u>

**International Brotherhood of Electrical Workers, AFL-CIO, Local Union No. 3;**
**Derek Jordan**

**John H. Byington , III**
**Marty Gerard Glennon**
**Robert T. McGovern**
Archer, Byington, Glennon & Levine, LLP
One Huntington Quadrangle
Suite 4C10

P.O. Box 9064
Melville, NY 11747
631 249-6565
Email: jbyington@abgllaw.com
Email: mglennon@abgllaw.com
Email: rmcgovern@abgllaw.com

**Intervenor Defendant**

**National Labor Relations Board**

**Dawn Goldstein**
**Dalford D. Owens**
National Labor Relations Board
Contempt, Compliance, & Special
Litigation Branch
Washington, DC 20570
202-273-2936
Email: dawn.goldstein@nlrb.gov
Email: dean.owens@nlrb.gov

**Sarah Posner**
National Labor Relations Board
1015 Half Street Southeast
Fourth Floor
Washington, DC 20003
202-273-2904
Email: sarah.posner@nlrb.gov

**JACK B. WEINSTEIN, Senior United States District Judge:**

## Table of Contents

I.   Introduction ........................................................................................................... 2

   A.   Essential Issue ................................................................................................. 2

   B.   Arguments of Parties ....................................................................................... 5

II.  Factual Background and Procedural History ..................................................... 7

   A.   Parties .............................................................................................................. 7

     1.   Plaintiff ...................................................................................................... 7

     2.   Defendants .................................................................................................. 7

   B.   Collective Bargaining Agreement (Apr. 1, 2009 – Mar. 31, 2013) ................. 7

     1.   Arbitration Clause ..................................................................................... 7

     2.   No-Strike Clause ....................................................................................... 8

   C.   Agreement (Mar. 28, 2013) ............................................................................. 9

   D.   TWC Files Unfair Labor Practice Charges with NLRB (Mar. 31, 2014) ........... 9

   E.   Work Stoppage (Apr. 2, 2014) ....................................................................... 10

   F.   TWC Files Complaint in Instant Case (Apr. 16, 2014) ................................. 10

   G.   Local 3 Files Unfair Labor Practice Charges with NLRB (Apr. 18, 2014) ..................... 11

   H.   TWC Request for Preliminary Injunction Denied (May 5, 2014) .................... 11

   I.   TWC Initiates Arbitration Before the AAA (May 9, 2014) .............................. 12

   J.   TWC and Local 3 Sign Specific Arbitration Agreement (July 24, 2014) ........ 13

   K.   Arbitration Hearings (July 24 and Sept. 16, 2014) ....................................... 13

   L.   Defendant's Motion to Dismiss Plaintiff's Complaint (Oct. 10, 2014) ............ 14

   M.   Arbitrator Interim Award; Local 3 Violated CBA (Dec. 12, 2014) ................. 14

   N.   Administrative Law Judge Decision (Apr. 28, 2015) ...................................... 15

   O.   Court Denies Enforcement of Interim Arbitral Award (May 22, 2015) ........... 16

   P.   Arbitration Award and Opinion Addressing ALJ decision (July 8, 2015) ....... 16

   Q.   NLRB Affirms Decision of ALJ (Oct. 29, 2015) ........................................... 18

   R.   Arbitrator Issues Final Award (Nov. 30, 2015) .............................................. 18

   S.   NLRB Reopens Local 3's Unfair Labor Practice Charge (Jan. 29, 2016) ......... 19

   T.   Instant Motions .............................................................................................. 20

   U.   Timeline of Relevant Facts ............................................................................ 21

III.     Summary Judgment Standard of Review.................................................................. 23

IV.     Law ........................................................................................................................ 24

    A.  Arbitration Agreement ...................................................................................... 24

    B.  Arbitrability........................................................................................................ 26

    C.  Enforcement of Arbitral Award ........................................................................ 26

       1.  Confirmation under LMRA ........................................................................ 28

       2.  Confirmation under FAA ........................................................................... 30

    D.  Public Policy ...................................................................................................... 31

V.      Application of Law to Facts.................................................................................... 32

    A.  Valid Arbitration Agreement ............................................................................ 33

    B.  Failure to Object to Arbitrator's Jurisdiction................................................... 35

    C.  Award Enforceable ............................................................................................ 36

    D.  Effect of NLRB Decision on Arbitrator Award................................................ 37

VI.    Final Decision of Arbitrator.................................................................................. 38

VII.   Conclusion ............................................................................................................. 39

## I.    Introduction

### A.  Essential Issue

Posed is this question: Is a specific arbitration agreement—to determine whether a precise work stoppage was justified—valid and enforceable even if the National Labor Relations Board ("NLRB") determined that a general collective bargaining agreement ("CBA") with relevant no-strike and general arbitration clauses was never operative.  The answer in the present case: The parties' independent narrow agreement to arbitrate a particular dispute about a particular work stoppage is enforceable.

This action arises out of a discrete dispute concerning whether defendant, International Brotherhood of Electrical Workers, AFL-CIO, Local No. 3 ("Local 3"), (1) engaged in an unlawful work stoppage on April 2, 2014 of about one hour in duration, and, if so, (2) what compensation plaintiff, Time Warner Cable of New York City, LLC, ("TWC"), was entitled to as damages.

Plaintiff TWC initiated a claim against Local 3 on April 16, 2014 in this district court for the Eastern District of New York ("court"). It sought an order enjoining defendants from future strikes as well as a judgment for damages. *See* Am. Compl., 14-CV-2437, Aug. 27, 2014, ECF No. 35 ("Am. Compl.").

Almost simultaneously, the parties expressly agreed, in a narrow free-standing arbitration agreement, to resolve their dispute through binding arbitration. The instant case was stayed pending completion of the arbitration.

The parties engaged in the arbitration without objection. On November 30, 2015, American Arbitration Association ("AAA") arbitrator Daniel F. Brent ("arbitrator") issued a final award for TWC of $19,297.96. The arbitrator determined that, by engaging in a work stoppage on April 2, 2014, Local 3 had violated the no-strike provision contained in a CBA. The NLRB had found this CBA had never been adopted by Local 3. The arbitrator directed Local 3 to desist from similar conduct in the future, and to pay damages to TWC.

On January 20, 2016, TWC filed a motion to confirm the final arbitration award. *See* Not. of Pl.'s Mot. for Summ. J., Jan. 20, 2016, ECF No. 63. Local 3 opposed.

While the dispute between Local 3 and TWC was before this court and also before an arbitrator, the NLRB addressed two related unfair labor practice claims: one brought by TWC and one by the union on behalf of employees of TWC who were members of Local 3.

TWC's NLRB claim alleged that Local 3 had engaged in an unfair labor practice by refusing to sign the CBA pursuant to which the parties had been operating since April 2013. *See* Decl. of Kevin. M. Smith in Supp. of Pl.'s Mot. for Summ. J., Jan. 20, 2016, ECF No. 66 ("Smith Decl."), at ¶ 21; *see also infra* Part II.D. The NLRB administrative law judge ("ALJ") found that the parties had "plausible but different understandings" as to what was included in the CBA. Decl.

of Marty Glennon in Opp'n to Pl.'s Mot. for Summ. J., Feb. 12, 2016, ECF No. 76 ("Glennon Decl."), Ex. A, NLRB Decision & Order, 363 NLRB No. 30, Oct. 29, 2015, ECF No. 76-1 ("Ex. A"), at 18. He concluded that "there was no meeting of the minds and no [CBA] contract." *Id*. The NLRB subsequently affirmed the ALJ's decision. *Id*.; *see also infra* Part II.N and Part II.Q.

Local 3's NLRB charge claimed that TWC engaged in unfair labor practices by, among other things, suspending employees who engaged in the April 2, 2014 event. *See* NLRB Mem. in Supp. of Defs.' Cross Mot. for Summ. J., Feb. 16, 2016, ECF No. 83 ("NLRB Mem."), at 4 and Ex. 2, Compl. & Not. of Hr'g, NLRB Case No. 2-CA-126860, Jan. 29, 2016, ECF No. 83-2 ("Ex. 2"); Hr'g Tr., Mar. 1, 2016, at 23:6-18. At first the NLRB dismissed Local 3's charge, because the CBA pursuant to which the parties had apparently been operating included a no-strike provision. *See* Decl. of Daniel S. Kirschbaum in Opp'n to Defs.' Cross Mot. for Summ. J., Feb. 19, 2016, ECF No. 93 ("Kirschbaum Decl."), Ex. A, NLRB Decision to Dismiss Case No. 2-CA-126860, Jan. 5, 2015. But, it revoked its dismissal following the ALJ's determination, in the earlier case brought by TWC, that the parties had not agreed on all terms of the CBA. This case is currently pending before the NLRB. *See* NLRB Mem., at 4 and Ex. 2; Hr'g Tr., Mar. 1, 2016, at 23:6-18.

The arbitrator assumed, for the purposes of the arbitration, that an agreement not to strike had been embodied in the CBA which had been entered into between Local 3 and TWC.

The assumptions of the arbitrator and the NLRB are clearly inconsistent. The instant memorandum and order rests on the position that the arbitrator was not deprived of jurisdiction by the NLRB decision. *See* Hr'g Tr., Mar. 1, 2016, at 24:25-25:4, 25:17-26:3, 30:13-25, 31:19-22, 43:18-23.

In deciding enforceability of the arbitration award, the specific arbitration agreement, and not the general arbitration clause in the CBA, controls. The specific arbitration agreement entered into by TWC and Local 3 on July 24, 2014 is valid and enforceable. The NLRB's current independent proceedings concerning the rights of different parties—some four Local 3 members and TWC—does not control the arbitrator's decision in the specific arbitration Local 3 and TWC agreed to.

### B. Arguments of Parties

Plaintiff TWC seeks confirmation of the specific arbitration award. It argues that: (1) the arbitrator had the authority to decide the dispute pursuant to the CBA as well as the parties' subsequent independent agreement to arbitrate; (2) Local 3 waived any objections to the arbitrator's jurisdiction by participating in the arbitration; and (3) the no-strike and arbitration provisions included in the CBA remain valid despite the determination by the NLRB that there was no "meeting of the minds." *See* Pl.'s Mem. of Law in Supp. of Mot. for Summ. J. Confirming Arbitrator's Final Award, Jan. 20, 2016, ECF No. 65 ("Pl.'s Mem.").

Defendant Local 3 filed a cross-motion for a summary judgment declaring the arbitrator's final award invalid. *See* Not. of Defs.' Cross-Mot. for Summ. J., Feb. 12, 2016, ECF No. 73. It contends that the award is unenforceable as against public policy because it conflicts with the NLRB decision finding that there was "no contract" between the parties. *See* Defs.' Mem. of Law in Opp'n to Pl.'s Mot. to Confirm and in Supp. of Defs.' Cross-Mot. to Vacate the Final Arbitration Award, ECF No. 78 ("Defs.' Opp'n Mem."). According to Local 3, the NLRB's decision invalidates the CBA, including its arbitration and no-strike provisions. Local 3 seeks to vacate the award and to dismiss plaintiff's complaint with prejudice. *See id.*

The NLRB intervened in the present court action in support of Local 3's position. *See* NLRB's Mot. to Intervene, Feb. 12, 2016, ECF No. 79; Order, Feb. 17, 2016, ECF No. 86 (granting the NLRB's motion to intervene). According to the NLRB, the arbitral award must be vacated since: (1) the award is unenforceable as against public policy because it conflicts with an NLRB decision; (2) the NLRB decision that the CBA never came into effect is preclusive under res judicata and collateral estoppel principles; and (3) the general arbitration and no-strike provisions did not survive invalidation of the CBA. *See* NLRB's Mem., at 13-18. The position of the NLRB in opposition to enforcement of the individual arbitral award is rejected in the instant action.

The court now finds that the parties unequivocally entered into an independent agreement, apart from the general one in the CBA, to arbitrate the specific questions of: (1) whether Local 3 violated the no-strike clause in the CBA by its work stoppage of April 2, 2014; and (2) what damages, if any, TWC suffered as a result. The enforceability of this specific arbitration agreement does not depend on whether the CBA is operational; the parties expressly submitted their narrow ripe dispute about the work stoppage to binding arbitration through a separate agreement signed on July 24, 2014. *See* Pl.'s Letter Attaching Copy of July 24, 2014 Arbitration Agreement, Feb. 22, 2016, ECF No. 94.

Because the questions raised by plaintiff's complaint have been submitted to, and resolved by, binding arbitration, the only question before the court is whether to enforce the final arbitral award. The award addresses the narrow questions expressly submitted to arbitration by the parties on July 24, 2014. There are no signs of overreaching by the arbitrator; the parties had a full and fair opportunity to participate in the proceedings, and the result is reasonable and not in violation of public policy. The final arbitration award is confirmed.

## II. Factual Background and Procedural History

### A. Parties

#### 1. Plaintiff

Plaintiff TWC is a limited liability company organized under the laws of the State of Delaware, with its principal place of business at 60 Columbus Circle, New York, New York 10023. It provides Internet, cable television, video and telephone services to residential and commercial subscribers throughout the United States. Am. Compl., at ¶ 3.

#### 2. Defendants

Defendant Local 3, with its principal place of business at 158-11 Harry Van Arsdale Jr. Avenue, Flushing, New York 11365-9990, is a labor organization representing employees who perform services for TWC. *Id*. at ¶ 4. TWC has some 1,600 employees represented for the purposes of collective bargaining by Local 3. *Id.* at ¶ 9. Defendant Derek Jordan is a business manager and agent of Local 3. *Id.* at ¶ 5.

### B. Collective Bargaining Agreement (Apr. 1, 2009 – Mar. 31, 2013)

TWC and Local 3 entered into a CBA in effect from April 1, 2009 through March 31, 2013 ("Predecessor CBA"). *See* Smith Decl., Ex. B, Collective Bargaining Agreement, ECF No. 66-2 ("Ex. B"), at § 3. It was allegedly succeeded by the CBA.

#### 1. Arbitration Clause

Under Section 24 of the Predecessor CBA, a grievance is defined and procedures for resolution, including arbitration, are set out:

> (A) A grievance is defined, for the purposes of this Agreement, as a dispute or disagreement between the Employer and the Union, or the Employer and an employee, concerning the interpretation and/or application of any of the provisions of this Agreement.

(B) All grievances shall be adjusted in accordance with the following procedures:

**Step 1.** The party asserting the grievance shall first submit the grievance in writing to the other party within ten (10) days after the occurrence of the events upon which the grievance is based or ten (10) days after knowledge of the occurrence of the events, upon which the grievance is based, whichever is later. In the event either party fails to assert a grievance within said ten (10) day period, the grievance shall be deemed permanently waived and shall not be subject to grievance and arbitration proceedings.

**Step 2.** If the matter is not resolved within thirty (30) days after submission of the written grievance, either the Union or the Employer may submit the matter to arbitration by written notice to the other party. Unless an extension of time is agreed to in writing by the Union and the Employer, if the matter is not submitted to arbitration within said thirty (30) day period, the grievance shall be deemed permanently waived and shall not be subject to arbitration.

(C) Following the written notice of arbitration, the Union and the Employer shall attempt to agree upon a mutually satisfactory arbitrator. If they are unable to agree upon a mutually satisfactory arbitrator within ten (10) days of the notice, the arbitrator shall be selected pursuant to the rules of the American Arbitration Association.

(D) The decision of the arbitrator shall be final and binding. The arbitrator shall not have the authority to modify or amend this Agreement. The fees or other expenses of the arbitrator shall be shared equally by the Employer and the Union.

*Id*. at § 24.

## 2. No-Strike Clause

Under section 31 of the Predecessor CBA, "[t]here shall be no cessation or stoppage of work, service or employment, on the part of, or at the instance of either party, during the term of this Agreement." *Id.* at § 31.

### C. Agreement (Mar. 28, 2013)

On March 28, 2013, TWC and Local 3 entered into a Memorandum of Agreement ("MOA") pursuant to which they appeared to agree to extend the Predecessor CBA from April 1, 2013 through March 31, 2017, with specified changes. *See* Smith Decl., Ex. C, Mem. of Agreement, ECF No. 66-3 ("MOA"). According to the MOA, the listed changes were incorporated in the CBA, which would become effective "upon ratification by the Union membership, scheduled for April 4, 2013." *See id.* The MOA did not modify the Predecessor CBA's arbitration and no-strike clauses.

Local 3's website stated that the union had ratified the MOA—making the CBA operative—according to the agreed-upon schedule: "On April 4, 2013 over 1,300 members from Time Warner Cable filled the auditorium at Local 3 to vote. They unanimously ratified a four-year agreement which maintains their benefits, increased wages by 12% and provides continued training." Smith Decl., Ex. D, Time/Warner Cable Technicians and Cable TV Contractors Ratify New 3-Year Agreement, ECF No. 66-4 ("Ex. D").

### D. TWC Files Unfair Labor Practice Charges with NLRB (Mar. 31, 2014)

On March 31, 2014—nearly a year after ratification of the MOA—TWC filed a claim with the NLRB against Local 3 pursuant to sections 8(b)(3) and 8(d) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158. Charged was that Local 3 engaged in an unfair labor practice by refusing to sign the CBA incorporating changes to the Predecessor CBA agreed upon by the parties, as well as additional riders. *See* Smith Decl., at ¶ 21; NLRB Mem., at 4; NLRB Case No. 29-CB-125701.

### E. Work Stoppage (Apr. 2, 2014)

On the morning of April 2, 2014, Local 3 members parked their cars perpendicular to traffic and gathered *en masse* in the street in front of TWC's Paidge Avenue facility at about 7:00 a.m., blocking the flow of traffic and preventing employees from entering and leaving the building. *See* Tr. of Hr'g on Pl.'s Mot. for Prelim. Inj. 14-CV-2437, ECF No. 22, Apr. 29, 2014 ("Hr'g Tr., Apr. 29, 2014"), at 10:23-11:9; Tr. of Hr'g on Pl.'s Mot. for Prelim. Inj. 14-CV-2437, ECF No. 23, Apr. 30, 2014 ("Hr'g Tr., Apr. 30, 2014"), at 68:1-22. TWC's Paidge Avenue facility consists of offices, a garage, and dispatch operations. Here, technicians pick up their equipment and vehicles, and leave to service TWC's customers. Hr'g Tr., Apr. 29, 2014, at 17:23-18:2.

The stoppage lasted from about 7:00 a.m. to 8:00 a.m. Protesters were challenging TWC's requirement that foreman carry tools as well as the disciplining of four foremen, including a shop steward, for refusing to carry tools. *See Time Warner Cable of New York City LLC v. Int'l Bhd. of Electrial Workers, AFL-CIO, Local Union No. 3*, No. 14-CV-2437, 2014 WL 1779827, at *2 (E.D.N.Y. May 5, 2014).

### F. TWC Files Complaint in Instant Case (Apr. 16, 2014)

Plaintiff TWC initiated the instant suit on April 16, 2014. *See* Compl., Apr. 16, 2014, ECF No. 1. It asserted three claims based on Local 3's work stoppage of April 2: a federal claim for injunctive relief pursuant to section 301 of the Labor Management Relations Act ("LMRA") barring further strike activity, and two state claims for public and private nuisance. *See generally* Am. Compl.

Defendant countered that "[t]he blockade was no blockade" and that there "[n]ever was, nor will there be" a plan to blockade. Hr'g Tr., Apr. 29, 2014, at 28:11-29:4. Instead, according to defendant's counsel, the events of April 2, 2014 were merely a "safety meeting" of Local 3 on

the street. *See* Tr. of Hr'g on Pl.'s Mot. for Prelim. Inj. 14-CV-2437, May 2, 2014, ECF No. 24

("Hr'g Tr., May 2, 2014"), at 224:9-18.

### G. Local 3 Files Unfair Labor Practice Charges with NLRB (Apr. 18, 2014)

On April 18, 2014, shortly after TWC filed its charge with the NLRB, Local 3 filed its

unfair labor practice charge against TWC, alleging, among other things, that TWC violated section

8(a)(3) of the NLRA by suspending employees who engaged in the April 2, 2014 work stoppage.

*See* NLRB Mem., at 4; NLRB Case No. 02-CA-126860. The charge was initially dismissed based

on an understanding that the parties had adopted the CBA which included a no-strike provision:

> You have alleged in case No. 02-CA-126860 that the Employer
> violated the Act by interrogating employees about their protected
> concerted activities and by suspending four employees for engaging
> in a safety meeting with Local 3 . . . on public property. The
> evidence establishes that the Employer is a party to a [CBA] with
> the Union in effect from April 1, 2009 to March 31, 2013. On March
> 28, 2013, the parties entered a memorandum of agreement extending
> the [CBA] to March 31, 2017. Section 30 of the parties' [CBA]
> states that there shall be no cessation or stoppage of work, service
> or employment, on the part of, or at the instance of either party,
> during the term of the agreement. While you have characterized the
> events of April 2, 2014 as a safety meeting, the evidence establishes
> that on April 2, 2014 the employees engaged in a strike . . . . The
> April 2nd strike violated the no strike clause of the [CBA]. . . .
> Inasmuch as the evidence does not establish that the employer
> violated the Act as alleged or in any other manner encompassed by
> your charge, I am dismissing your charge in Case No. 2-CA-126860.

Kirschbaum Decl., Ex. A, NLRB Decision to Dismiss Case No. 2-CA-126860, Jan. 5, 2015; *see*

*also* Glennon Decl., Ex. D, Letter from NLRB Regional Director, May 21, 2015, ECF No. 76-4

("Ex. D.").

### H. TWC Request for Preliminary Injunction Denied (May 5, 2014)

On May 5, 2014, TWC's motion in the court for a preliminary injunction in the instant

case was denied. There was no evidence of probable future strikes and the availability of

arbitration as well as claims for legal damages provided sufficient protection. *See Time Warner Cable of New York City LLC*, 2014 WL 1779827 at *6-7.

The court held that TWC and Local 3 were parties to a CBA which provided for arbitration of disputes and prohibited any work stoppages, and that Local 3's April 2, 2014 blockade amounted to a strike in violation of the CBA. An order of the court noted that arbitration was proceeding "on the demand of the union." *Id*. at *2.

## I. TWC Initiates Arbitration Before the AAA (May 9, 2014)

On April 17, 2014, TWC sent a letter to Local 3 alleging violations of the CBA and "request[ing] arbitration of . . . grievances." *See* Smith Decl., Ex. I, Interim Award & Op. of Arbitrator, AAA Case No. 01-14-0000-4201, June 27, 2014, ECF No. 66-9 ("Ex. I"), at 3.

Arbitration was formally commenced by TWC about May 9, 2014. *See id*. at 7 ("The subsequent filing of a Demand for Arbitration with the American Arbitration Association on or about May 9, 2014 clearly satisfied the time limits established by the collective bargaining agreement for moving a grievance to arbitration . . . .").

Local 3 raised procedural objections. While it conceded that the parties had entered into a CBA which included the arbitration and no-strike provisions, it argued that TWC's arbitration demand was untimely and that by bringing an action in federal court, TWC had waived its right to arbitrate. It did not raise any objections to treatment of the CBA as being in effect. *See* Smith Decl., Ex. H, Mot. to Dismiss Employer's Demand for Arbitration, ECF No. 66-8 ("Ex. H").

The arbitrator rejected defendant's objections. He found that TWC "unambiguously communicated" to Local 3 that it was "moving the matter to the arbitration stage" and that its subsequent filing of a "Demand for Arbitration" with the AAA "clearly satisfied the time limits established by the [CBA] . . . ." Smith Decl., Ex. I, at 7.

**J.  TWC and Local 3 Sign Specific Arbitration Agreement (July 24, 2014)**

On July 24, 2014, the first hearing day in the arbitration proceedings, the parties executed

the following succinct arbitration agreement:

> The undersigned parties agree to submit the following dispute to
> Daniel F. Brent for binding arbitration:
>
> Did the Union violate the no-strike provision of the collective
> bargaining agreement?  If so, what shall be the remedy?

Pl.'s Letter Attaching Copy of July 24, 2014 Arbitration Agreement, Feb. 22, 2016, ECF No. 94.

The agreement was signed by authorized representatives of both TWC and Local 3.  The record

does not indicate that Local 3 raised any substantive objection to the arbitrator's authority to hear

the dispute or to the validity of the CBA at this time or at any time during the arbitration

proceedings.

**K.  Arbitration Hearings (July 24 and Sept. 16, 2014)**

Arbitration evidentiary hearings were held on July 24 and September 16, 2014.  Smith

Decl., Ex. L, Interim Award & Op. of Arbitrator, AAA Case No. 01-14-0000-4201, Dec. 12, 2014,

ECF No. 66-12 ("Ex. L").  The arbitrator subsequently noted, without objection, that: "[b]oth

parties attended these hearings, were represented by counsel, and were afforded a full and equal

opportunity to offer testimony under oath, to cross-examine witnesses and to present evidence and

arguments.  Both parties submitted post-hearing briefs, and the record was closed on November

19, 2014."  *Id.*

No timely objections were raised to the validity of the CBA or to the arbitrator's authority

to decide the dispute during the arbitration evidentiary hearings.  Derek Jordan, business agent of

Local 3, testified that TWC and Local 3 were currently parties to the CBA, because the Predecessor

CBA had been extended through the MOA.  *See* Smith Decl., Ex. J, Arbitration Hr'g Tr., Sept. 18, 2014, ECF No. 66-10 ("Ex. J"), at 532:6-14.

### L.  Defendant's Motion to Dismiss Plaintiff's Complaint (Oct. 10, 2014)

Local 3 filed a motion in the court to dismiss TWC's complaint in the instant case on October 10, 2014.  It argued that: (1) the state law claims were improperly pled; (2) union officers and employees are not individually liable to third parties for acts performed as union members; and (3) TWC's request for injunctive relief should be denied for the same reasons that its request for a preliminary injunction was denied.  *See* Defs.' Mem. of Law in Supp. of Mot. to Dismiss the Am. Compl., Oct. 10, 2014, ECF No. 43.  TWC objected to the motion as untimely.  *See* Pl.'s Letter, Oct. 13, 2014, ECF No. 44.  TWC then moved to dismiss the suit without prejudice in light of its pending attempted resolution of the dispute through arbitration.  *See* Pl.'s Letter Mot. to Dismiss, Oct. 14, 2014, ECF No. 46.  The motion to dismiss was not granted.  On October 15, 2014 the case was stayed pending completion of the arbitration.  *See* Order, Oct. 15, 2014, ECF No. 50 ("The case is stayed for 30 days or until an arbitration award is rendered, whichever occurs later.").

### M. Arbitrator Interim Award; Local 3 Violated CBA (Dec. 12, 2014)

On December 12, 2014, the arbitrator issued an interim award and opinion noting that

> [h]earings were held . . . on July 24, 2014 and September 16, 2014 at the American Arbitration Association in New York City before Daniel F. Brent, duly designated as Arbitrator.  Both parties attended these hearings, were represented by counsel, and were afforded full and equal opportunity to offer testimony under oath, to cross-examine witnesses and to present evidence and arguments. Both parties submitted post-hearing briefs, and the record was declared closed on November 19, 2014.

Smith Decl., Ex. L, at 1.

He determined that the April 2, 2014 blockade violated the no-strike provision of the

CBA:

> [B]y creating a sham safety meeting that not only impeded the timely arrival of bargaining unit employees for their shifts, but also involved many employees until well after the scheduled commencement of their shift hours, and to the extent that customers were deprived of their coveted early morning appointments and other customers were inconvenienced by unnecessary delay in keeping scheduled service appointments throughout the day on April 2, 2014, the Union was directly and inextricably culpable for violating Article 31 of the [CBA]. The time honored maxim, "Work now, grieve later" cannot be ignored either by individual employees or by their unions without precipitating consequences, including injunctive relief and appropriate penalties.

*Id*. at 10-11.

The arbitrator directed Local 3 not to engage in any future violations of the CBA's no-

strike provision. He also determined that TWC was entitled "to recoup expenses proximately

caused by the Union's actions in violation of the 'no-strike' provision of the parties' [CBA]" and

retained jurisdiction in order to compute damages. *See id*. at 11-16.

### N. Administrative Law Judge Decision (Apr. 28, 2015)

NLRB Administrate Law Judge ("ALJ") Steven Fish presided over a hearing on TWC's

charge of unfair labor practices (NLRB Case No. 29-CB-125701) on July 29 and October 6, 2014;

he issued a decision on April 28, 2015. Glennon Decl., Ex. A. He recommended that the unfair

labor practice charges brought by TWC be dismissed because the parties did not have a "meeting

of the minds" regarding whether certain riders would be part of the CBA, so that the CBA was not

in effect:

> I conclude that the terms of the MOA were ambiguous as to whether the riders from the previous agreements were to be included in the successor agreement. I find that the parties had plausible but different understandings and beliefs as to this issue, and therefore there was no meeting of the minds and no contract.

*Id*. at 18.

### O. Court Denies Enforcement of Interim Arbitral Award (May 22, 2015)

On February 11, 2015 TWC initiated a separate action in this court seeking to confirm the interim arbitral award issued on December 12, 2014. *See* Compl. to Confirm and Enforce Arbitration Award, 15-CV-700, Feb. 11, 2015, ECF No. 1 ("Compl."). Confirmation was denied because the award was not final; the arbitrator had retained jurisdiction to compute the appropriate remedy. *See Time Warner Cable of New York City LLC v. Int'l Bhd. of Electrial Workers, AFL-CIO, Local Union No. 3*, No. 15-CV-700, 2015 WL 2454122 (E.D.N.Y. May 21, 2015). The court noted:

> By participating in arbitration and failing to raise any substantive objection to the proceedings . . . defendant arguably has waived its right to challenge the present arbitration and the court's power to confirm any resulting award. Not before this court is the issue of whether waiver by participation exists should the [NLRB] find that there was no [CBA].

*Id*. at *4 (internal citation omitted).

### P. Arbitration Award and Opinion Addressing ALJ decision (July 8, 2015)

On May 22, 2015—after the closing of the arbitration record and the arbitrator's interim award finding Local 3 liable, but prior to the release of the final award calculating damages—Local 3 wrote to the arbitrator, stating that "[b]ecause there was no CBA in effect at the time of the alleged breach in April 2014, any past or future award you have or may issue in favor of Time Warner Cable will be unenforceable;" "the Union objects to any further proceedings as there is no contract under which you have authority to proceed." Glennon Decl., Ex. F, Union Letter to Arbitrator Brent, May 22, 2015, ECF No. 76-6 ("Ex. F"). Based on the ALJ's decision, Local 3 argued that there was no valid agreement to arbitrate and no contractual provision against strikes

16

by union employees. TWC replied that, "by actively participating in all phases of the proceeding, from selecting [the] Arbitrator, to engaging in pre-hearing motion practice, to stipulating to the issues for decision, by calling and cross-examining witnesses, to submitting a post-hearing brief— all without questioning the existence of a binding collective bargaining agreement," Local 3 had waived any objection to the arbitrability of the dispute. *See* Smith Decl., Ex. M, TWC Letter to Arbitrator Brent, May 27, 2015, ECF No. 66-13 ("Ex. M").

On July 8, 2015, the arbitrator issued an award and opinion rejecting Local 3's arguments. Smith Decl., Ex. N, Award & Op. of Arbitrator, AAA Case No. 01-14-0000-4201, July 8, 2015, ECF No. 66-14 ("Ex. N"). He considered the ALJ's decision and determined that it did not affect his own authority to proceed with arbitration: "there is no basis in Judge Fish's decision to consider the arbitration clause contained in both the predecessor and *newly negotiated collective bargaining agreement* to have been revoked, either retroactively or prospectively, in a manner that would deprive this Arbitrator of legitimate authority . . . ." *Id.* at 4 (emphasis added). According to the arbitrator, first the CBA, and then the parties' narrow executed arbitration agreement of July 24, 2014, provided him with the authority to issue a binding award (1) determining whether the actions of the union's employees of April 2, 2014 constituted a breach of the CBA's no-strike clause, and (2) fixing remedies. *Id.* at 4-5. He explained,

> there is no basis in the record of the instant case, or any subsequent event, to declare that [TWC] is estopped from achieving finality by quantification of a monetary remedy simply because an administrative law judge or other NLRB official has rendered an opinion on the issue of inclusion of local riders into the successor agreement after it was ratified by both parties. *Judge Fish did not declare the collective bargaining agreement a nullity, especially as it affected an arbitration award issued before his decision.*
>
> Rather, Judge Fish held that the General Counsel of the NLRB had not demonstrated sufficient proof of a meeting of the parties' minds regarding the inclusion or exclusion of the local riders within the ratified terms of the successor collective bargaining agreement to

declare that the Union's refusal to execute the collective bargaining agreement in the form proffered by [TWC] constituted an unfair labor practice. Regardless of the ultimate disposition of Judge Fish's decision, *there is inadequate basis in the record before this Arbitrator to jettison my Award and Opinion dated December 12, 2014 or to invalidate the computation of the damages ordered pursuant to that Award and quantified herein.*

*Id*. at 6-7 (emphasis added).

### Q. NLRB Affirms Decision of ALJ (Oct. 29, 2015)

The NLRB affirmed the ALJ's decision on October 29, 2015. *See* Glennon Decl., Ex. A.

### R. Arbitrator Issues Final Award (Nov. 30, 2015)

On November 30, 2015, the arbitrator issued a final award, incorporating by reference his prior decisions of December 12, 2014 and July 8, 2015. He confirmed his prior determination that Local 3 had violated the no-strike provision of the CBA and directed it not to engage in similar activity in the future. In the final award, the arbitrator updated his damages calculation and awarded TWC the sum of $19,297.96. *See* Smith Decl., Ex. A, Final Award & Op. of Arbitrator, AAA Case No. 01-14-0000-4201, Nov. 30, 2015, ECF No. 66-1 ("Ex. A").

The arbitrator declined to reopen the proceedings for additional submissions regarding TWC's estimation of contractor costs. *See id*. at 4 ("I do not have jurisdiction to reopen the matter for additional submissions without mutual consent of the parties, which has not been granted in the instant case."). He noted that he had "awaited the NLRB's review of the propriety of the ALJ's determination regarding the existence of a valid collective bargaining agreement, and permitted the parties to avail themselves of access to court." *Id.* He concluded that his jurisdiction rested on the narrow arbitration agreement covering this one dispute:

> Determining the validity of the parties' collective bargaining agreement during the interval the instant grievance was submitted to arbitration falls outside the purview of this Arbitrator's jurisdiction.

However, *the parties executed an agreement to arbitrate on the day of the first hearing in this matter that explicitly submitted their dispute to me for binding arbitration*. Thus, I have concluded that, at least on that basis, I have valid jurisdiction to decide the ongoing dispute about correcting an error of omission in my Award at the request of one party, regardless of what the NLRB may have determined about the validity of the collective bargaining agreement, but subject, of course, to the Court's appropriate subsequent determination of any dispute between the Parties regarding enforcement of my Awards.

*Id*. at 5 (emphasis added).

### S. NLRB Reopens Local 3's Unfair Labor Practice Charge (Jan. 29, 2016)

After the ALJ's determination that there was no "meeting of the minds" on the purported renewed CBA, the NLRB revoked its dismissal of Local 3's unfair labor practice charge. On May 21, 2015, the NLRB Regional Director wrote to the parties, revoking the dismissal. He ruled:

By letter dated January 5, 2015, the Region dismissed the following allegations contained in the above-captioned charge [NLRB Case No. 02-CA-126860]: interrogations, suspensions, surveillance and creating the impression of surveillance. On April 28, 2015, [ALJ] Steven Fish issued a decision in *Time Warner Cable*, 29-CB-125701 which made findings of fact and conclusions of law impacting the Region's decisions as set forth in its letter of January 5. In particular, Judge Fish dismissed the allegation that the Union failed to execute an agreed upon contract and found there was no meeting of the minds between the parties and therefore no contract. As this decision is pending before the Board, and its final outcome is determinative of the issues in the instant matter, I hereby revoke the dismissal of the allegations as set forth in the Region's letter of January 5 and will hold the above-captioned case in abeyance pending a decision by the Board in 29-CB-125701 . . . .

Glennon Decl., Ex. D.

On January 29, 2016, following the NLRB's affirmance of the ALJ's decision in the charge brought by TWC, the NLRB reopened Local 3's charge that TWC violated the NLRA by suspending employees who engaged in the April 2, 2014 stoppage. *See* NLRB Mem., Ex. 2; Hr'g Tr., Mar. 1, 2016, at 23:6-18. That proceeding is ongoing.

### T. Instant Motions

On January 20, 2016, TWC moved for summary judgment seeking confirmation and enforcement of the final arbitral award issued on November 30, 2015.  *See* Not. of Pl.'s Mot. for Summ. J., Jan. 20, 2016, ECF No. 63.  Local 3 opposed TWC's motion.  It stated that, "because TWC failed to file either a complaint or petition to confirm the arbitration award . . . there is simply no basis for a summary judgment motion in the absence of an initial pleading seeking the relief sought in the motion."  Letter Requesting Summ. Denial of Pl.'s Summ. J. Mot., Jan. 26, 2016, ECF No. 67.  Since TWC did not seek enforcement of the award in its initial complaint, Local 3 argues, it is improper for plaintiff to seek confirmation through a summary judgment motion rather than a separate action.  *Id.*  Local 3 then filed a cross-motion for summary judgment asking the court to vacate the award.  *See* Defs.' Cross-Mot. for Summ. J., Feb. 12, 2016, ECF No. 73.

On February 12, 2016, TWC filed a detailed letter supporting its pending motion in favor of confirmation:

> The parties' dispute over Local 3's April 2, 2014 blockade of Time Warner Cable's premises was voluntarily submitted by both parties to arbitration and has been exhaustively addressed in those proceedings.  In these circumstances, upon confirmation of the Arbitrator's award Time Warner Cable will have obtained the damages and injunctive relief sought for Local 3's unlawful conduct.  Accordingly, at this point, in the interest of avoiding further litigation over collateral issues, Plaintiff does not oppose dismissal of its state law claims for public and private nuisance. Plaintiff respectfully submits that this Court should address Time Warner Cable's application for confirmation of the Arbitrator's award, and Local 3's objection thereto, in the context of the Amended Complaint's first cause of action, for relief pursuant to Section 301 of the [LMRA].  Alternatively, to the extent the Court considers it necessary, the Court should deem the Amended Complaint's Section 301 claim expanded to encompass confirmation of the Arbitrator's award.

Pl.'s Reply in Opp'n re Mot. to Dismiss, Feb. 12, 2016, ECF No. 74.

Defendants filed a reply noting that TWC did not address the merits of Local 3's motion to dismiss. They requested dismissal of TWC's complaint with prejudice. *See* Defs.' Reply to Pl.'s Feb. 12, 2016 Letter, Feb. 19, 2016, ECF No. 90.

A hearing on the parties' motions for summary judgment was conducted on March 1, 2016. Counsel for the parties as well as the NLRB participated in this hearing.

**U.  Timeline of Relevant Facts**

The intertwined court, NLRB, and arbitration proceedings are hard to follow without an understanding of the chronology. The timeline is summarized in the following temporal chart (grey = facts; blue = NLRB proceedings; green = court proceedings; red = arbitration proceedings):



Apr. 1, 2009 – Mar. 31, 2013
Predecessor CBA between TWC and Local 3.

Mar. 28, 2013
MOA extending Predecessor CBA from April 1, 2013 through March 31, 2017.

Apr. 4, 2013
Local 3 ratification of MOA.

Mar. 31, 2014
TWC files unfair labor practice charges against Local 3 over refusal to sign CBA.

April 2, 2014
Strike by Local 3.

Apr. 16, 2014
TWC files complaint in this action seeking injunctive relief and damages.

April 18, 2014
Local 3 files unfair labor practice charges against TWC based on suspension of employees.

May 5, 2014
Court finds that TWC and Local 3 are parties to a CBA and Local 3 violated the CBA by striking on April 2, 2014. Court denies TWC's request for a preliminary injunction.

May 9, 2014
TWC files arbitration demand with AAA over Local 3's strike activities.

June 12, 2014
Local 3 moves to dismiss arbitration on procedural grounds.

June 27, 2014
Arbitrator denies Local 3's motion to dismiss.

July 24, 2014
TWC and Local 3 execute separate specific arbitration agreement.

July 24 & Sept. 16, 2014
Parties participate in arbitration hearings.

Oct. 10, 2014
Local 3 moves to dismiss with prejudice TWC's complaint in instant action.

Oct. 14, 2014
TWC moves to dismiss its complaint, in light of expected resolution through arbitration.

Oct. 15, 2014
Instant case stayed pending arbitration.

Dec. 12, 2014
Interim arbitration award. April 2 blockade violated CBA no-strike clause. Does not quantify damages.

Jan. 5, 2015
NLRB dismisses Local 3's charges based on CBA.

Feb. 11, 2015
TWC brings related action (15-CV-700) to confirm interim award.

Apr. 28, 2015
ALJ decision. Local 3 did not violate the NLRA by refusing to execute the CBA tendered by TWC.

May 21, 2015
Court grants Local 3's motion to dismiss TWC's action to confirm interim award. Without damages, award not final.

May 22, 2015
Local 3 writes to arbitrator stating that award would be unenforceable because there is no valid CBA.

July 8, 2015
Arbitrator issues award finding that arbitration clause in CBA remained valid.

Oct. 29, 2015
NLRB affirms decision of ALJ.

Oct. 29, 2015
Local 3 sends letter to arbitrator informing him of NLRB decision.

Nov. 30, 2015
Arbitrator issues final award incorporating prior awards and quantifying damages.

January 29, 2016
NLRB reopens charge brought by Local 3 against TWC following NLRB's finding of "no contract."

### III.     Summary Judgment Standard of Review

"A motion to confirm an arbitral award should be 'treated as akin to a motion for summary judgment.'" *Trs. of Empire State Carpenters Annuity v. Fourmen Constr., Inc.*, No. 15-CV-3252, 2016 WL 146245, at *2 (E.D.N.Y. Jan. 13, 2016) (quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 109 (2d Cir. 2006)).

Summary judgment is appropriate where "admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law." *Bank of Am., N.A. v. Fischer*, 927 F. Supp. 2d 15, 25 (E.D.N.Y. 2013) (citing *Viola v. Phillips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994)); Fed. R. Civ. P. 56(a).  The moving party bears the burden of showing that he is entitled to summary judgment.  *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005).  "The relevant governing law in each case determines which facts are material; '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Fischer*, 927 F. Supp. 2d at 24 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor." *Id.* (citing *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996)).

The same standard applies to cross-motions for summary judgment: "each movant has the burden of presenting evidence to support its motion that would allow the [ ] court, if appropriate, to direct a verdict in its favor." *Sewell v. New York City Transit Auth.*, 809 F. Supp. 208, 216 (E.D.N.Y. 1992) (quoting *Barhold v. Rodriguez*, 863 F.2d 233, 236 (2d Cir. 1988)) (internal

quotation marks omitted). "[T]here can be 'no genuine issue as to any material fact' if the plaintiff exhibits 'a complete failure of proof concerning an essential element of [his] case . . . .'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Similarly, while a cross-movant may defeat the summary judgment motion of another cross-movant by "adequately demonstrating the existence of a genuine issue of material fact, a complete failure of proof by one will compel the entry of summary judgment for the other." *Id.*

## IV.     Law

### A.  Arbitration Agreement

The Supreme Court has recognized a broad federal policy in favor of arbitration, requiring enforcement of arbitration agreements. *See, e.g.*, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984) ("In enacting § 2 of the federal Act, Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration."); *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987) ("The Arbitration Act thus establishes a 'federal policy favoring arbitration,' requiring that 'we rigorously enforce agreements to arbitrate.'") (internal citations omitted); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345 (2011) ("[O]ur cases place it beyond dispute that the [Federal Arbitration Act] was designed to promote arbitration.").

Arbitration "is a matter of contract." *AT&T Mobility LLC*, 563 U.S. at 339 (citing *Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772, 2776 (2010)). An arbitrator derives his or her authority from the intent of the parties, as expressed through their agreement to arbitrate. *See, e.g.*, *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682-83 (2010) ("the central or 'primary' purpose of the [Federal Arbitration Act] is to ensure that private agreements to arbitrate

are enforced according to their terms") (internal citations and quotation marks omitted); *AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 648-49 (1986) ("[A]rbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration"); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628 (1985) ("By agreeing to arbitrate . . . [a party] trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration."); *see also United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 581 (1960) ("[An arbitrator] has no general charter to administer justice for a community which transcends the parties.  He is rather part of a system of self-government created by and confined to the parties.") (internal quotation marks omitted).

When enforcing an arbitration agreement, courts "give effect to the contractual rights and expectations of the parties."  *See Stolt-Nielsen*, 559 U.S. at 682 (internal citations omitted).  In this effort, "as with any other contract, the parties' intentions control[.]"  *Mitsubishi Motors Corp.*, 473 U.S. at 626.  If the parties intended to arbitrate a dispute, courts are generally required to "enforce [such] agreements . . . according to their terms."  *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 669 (2012); *see also Cohen v. UBS Fin. Servs., Inc*., 799 F.3d 174, 177 (2d Cir. 2015); *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 844 (2d Cir. 1987) (The Federal Arbitration Act "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.") (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)) (internal quotation marks omitted) (emphasis in original).

## B. Arbitrability

Objections to arbitrability—*i.e.*, an arbitrator's authority to hear a particular dispute—must be timely made. *See, e.g.*, *ConnTech Dev. Co. v. Univ. of Conn. Educ. Props., Inc.*, 102 F.3d 677, 685 (2d Cir. 1996) ("An objection to the arbitrability of a claim must be made on a timely basis, or it is waived."). A party's participation in the arbitration may waive rights or otherwise prevent it from contesting the jurisdiction of the arbitrator to hear a particular dispute. *See, e.g.*, *Application of Herman Miller, Inc.*, No. 97-CV-7878, 1998 WL 193213, at *3 (S.D.N.Y. Apr. 21, 1998) *aff'd sub nom. Herman Miller, Inc. v. Worth Capital, Inc. y*, 173 F.3d 844 (2d Cir. 1999); *Gvozdenovic v. United Airlines, Inc.*, 933 F.2d 1100 (2d Cir. 1991) (holding that appellants were bound by arbitrator's ruling because they voluntarily and without objection participated in arbitration by, *inter alia,* arguing their case before an arbitrator); *Teamsters Local Union No. 764 v. J.H. Merrit and Co.*, 770 F.2d 40 (3d Cir. 1985) (appellant waived its right to contest the arbitrators' jurisdiction after arbitration by failing to raise its jurisdictional objection during arbitration); *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Indep. Truck Drivers Union, Local No. 1*, 611 F.2d 580, 584 (5th Cir. 1980) (denying appellant's claim that arbitrator exceeded the scope of his authority in deciding an issue because neither party contested arbitrability and the entire dispute was presented to the arbitrator without reservation: "On whatever basis it rests, waiver, estoppel or new contract, the result is that the grievance submitted to the arbiter defines his authority without regard to whether the parties had a prior legal obligation to submit the dispute.").

## C. Enforcement of Arbitral Award

The Supreme Court has repeatedly acknowledged a strong federal policy in favor of settling labor disputes through arbitration. *See, e.g.*, *Boys Markets, Inc. v. Retail Clerks Union, Local 770*,

398 U.S. 235, 241-43 (1970); *United Steelworkers of Am. v. American Mfg. Co.*, 363 U.S. 564, 565 (1960).

"Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185 (1994), provides federal courts with jurisdiction over petitions brought to confirm labor arbitration awards." *Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 88 (2d Cir. 1998) (citing *Harry Hoffman Printing, Inc. v. Graphic Commc'ns, Int'l Union, Local 261*, 912 F.2d 608, 612 (2d Cir. 1990)).

The LMRA, rather than the Federal Arbitration Act ("FAA") governs actions involving "contracts of employment of . . . workers engaged in foreign or interstate commerce." *Supreme Oil Co. v. Abondolo*, 568 F. Supp. 2d 401, 406 (S.D.N.Y. 2008); 9 U.S.C. § 1; 29 U.S.C. § 185. Yet, federal courts enforcing labor arbitration awards look to the FAA "to guide the development of rules of federal common law to govern such disputes pursuant to the authority to develop such rules granted under 29 U.S.C. § 185." *Supreme Oil*, 568 F. Supp. 2d at 406; *United Paperworkers Int'l v. Misco*, 484 U.S. 29, 40 n.9 (1987) (stating that "[t]he [Federal] Arbitration Act does not apply to 'contracts of employment of . . . workers engaged in foreign or interstate commerce,' 9 U.S.C. § 1, but the federal courts have often looked to the Act for guidance in labor arbitration cases, especially in the wake of the holding that § 301 of the Labor Management Relations Act 1947, 61 Stat. 156, 29 U.S.C. § 185, empowers the federal courts to fashion rules of federal common law to govern '[s]uits for violation of contracts between an employer and a labor organization" under the federal labor laws."); *see also Teamsters Local 814 Welfare Fund v. Dahill Moving & Storage Co.*, No. 07-CV-2005, 2007 WL 1580085, at *1 (E.D.N.Y. May 30, 2007) (confirming an arbitration award under the LMRA and explicitly looking to the procedure for confirming an arbitration award under the FAA).

### 1. Confirmation under LMRA

"Confirmation of a labor arbitration award under LMRA § 301 is a *summary proceeding that merely makes what is already a final arbitration award a judgment of the Court.*" *Trs. of Empire State Carpenters Annuity*, 2016 WL 146245, at *2 (internal citations and quotation marks omitted) (emphasis added); *see also Supreme Oil*, 568 F. Supp. 2d at 405 ("Court review of an arbitration award is extremely deferential under both § 301 of the LMRA and § 9 of the Federal Arbitration Act . . . .") (internal citations omitted).

The Supreme Court has recognized that "[t]he federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." *Misco*, 484 U.S. at 36 (quoting *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 596 (1960)). Accordingly, a district court's review of a final arbitration award is limited. *Id.*; *see also Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) ("Judicial review of a labor-arbitration decision . . . is very limited. *Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement.*") (emphasis added). "The strong policy favoring the resolution of labor disputes by arbitration dictates that courts give broad discretion to the powers of an arbitrator and construe narrowly those circumstances where an award ought to be vacated." *Huntington Hosp. v. Huntington Hosp. Nurses' Ass'n*, 302 F. Supp. 2d 34, 39 (E.D.N.Y. 2004) (citations omitted).

A court must confirm a labor arbitration award as long as it "draws its essence from the collective bargaining agreement" and does not amount to the arbitrator's "own brand of industrial justice." *First Nat'l Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food Emps. Union Local 338, Affiliated with the Retail, Wholesale & Dep't Store Union, AFL–CIO*, 118 F.3d 892, 896 (2d Cir. 1997) (quoting *Misco*, 484 U.S. at 36). An award "draws its essence" from an

agreement if it "could reasonably have been derived from the terms of the contract itself." *Ottley v. Sheepshead Nursing Home*, 688 F.2d 883, 890 (2d Cir. 1982). An award fails to "draw its essence" from an agreement "[w]hen it is clear that the arbitrator must have based his award on some body of thought, or feeling, or policy, or law that is outside the contract [ ] and not incorporated in it by reference." *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, No. 15-CV-5916, 2015 WL 5148739, at *12 (S.D.N.Y. Sept. 3, 2015) (quoting *In re Marine Pollution Serv., Inc.*, 857 F.2d 91, 94 (2d Cir. 1988)) (internal quotation marks omitted).

"As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Local 1199, Drug, Hosp. & Health Care Emps. Union, RWDSU, AFL–CIO v. Brooks Drug Co.*, 956 F.2d 22, 25 (2d Cir. 1992) (internal citations and quotation marks omitted); *see also W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum and Plastic Workers of Am.*, 461 U.S. 757, 764 (1983) ("[A] court is bound to enforce the award and is not entitled to review the merits of the contract dispute. This remains so even when the basis for the arbitrator's decision may be ambiguous.") (internal citations omitted); *Trs. of Empire State Carpenters Annuity*, 2016 WL 146245, at *2. "It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *United Steelworkers of Am.*, 363 U.S. at 599.

A court may not review the merits of an arbitrator's decision, even if the parties allege that it "rests on factual errors or misinterprets the parties' agreement." *Major League Baseball Players Ass'n*, 532 U.S. at 509 (citation omitted). A "federal court may not overrule an arbitrator's decision simply because the court believes its interpretation of the contract would be the better one."

*Duralab Equip. Corp. v. Amalgamated Indus. Union Local 76B I.U.E., ALF-CIO*, No. CV-94-5297, 1995 WL 87241, at *3 (E.D.N.Y. Feb. 21, 1995) (citation omitted).

### 2. Confirmation under FAA

Under the FAA, a court must confirm an arbitral award, unless it finds that one of the limited grounds for vacating or modifying the award applies. 9 U.S.C. §§ 9-11. Pursuant to section 10 of Title 9 of the United States Code, a court may only vacate an award under the following circumstances:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10. Vacating an award pursuant to the above grounds presents "a high hurdle." *See StoltNielsen*, 559 U.S. at 671 ("It is only when [an] arbitrator strays from interpretation and application of the agreement and effectively dispense[s] his own brand of industrial justice that his decision may be unenforceable.") (internal quotation marks and citations omitted). The party seeking to vacate or modify the award bears the burden of proving the existence of one of these grounds. *See id.*

Under section 11 of the FAA, a court may modify an award:

> In either of the following cases the United States court in and for the district wherein the award was made may make an order modifying

or correcting the award upon the application of any party to the arbitration--

> (a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.
>
> (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.
>
> (c) Where the award is imperfect in matter of form not affecting the merits of the controversy.
>
> *The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties.*

9 U.S.C. § 11 (emphasis added).

### D. Public Policy

A court may refuse to enforce an arbitrator's award if it violates public policy. *See Misco*, 484 U.S. at 42 ("A court's refusal to enforce an arbitrator's award under a collective-bargaining agreement because it is contrary to public policy is a specific application of the more general doctrine, rooted in the common law, that a court may refuse to enforce contracts that violate law or public policy.").

This "public policy exception" is extremely limited. The burden of proof lies with the party seeking the benefit of the exception. *Local 97, Int'l Bhd. of Elec. Workers, A.F.L.-C.I.O. v. Niagara Mohawk Power Corp.*, 196 F.3d 117, 125 (2d Cir. 1999).

A court may only deny enforcement if the award would violate "some explicit public policy" that is "well defined and dominant, and is to be ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" *W.R. Grace*, 461 U.S. at 766 (quoting *Muschany v. United States*, 324 U.S. 49, 66 (1945)). "Once the policy is identified, the party seeking to have the award vacated must show that a sufficient link exists

between enforcement of the award and violation of the policy to warrant the refusal to confirm the award." *Maggio v. Local 1199*, 702 F. Supp. 989, 992 (E.D.N.Y. 1989) *aff'd*, 880 F.2d 1319 (2d Cir. 1989) (citing *Misco*, 484 U.S. at 44).

"A court may vacate an arbitral award on public policy grounds only if it can demonstrate that the policy is one that specifically militates against the relief ordered by the arbitrator." *Niagara Mohawk Power Corp.*, 196 F.3d at 125 (internal quotation marks and citations omitted). Courts may not deny enforcement based on a disagreement "'with [the arbitrator's] honest judgment' about the proper remedy to be awarded in a given case." *Id.* (quoting *Misco*, 484 U.S. at 38). "To the contrary, the court must determine whether the award itself, as contrasted with the reasoning that underlies the award, create[s] [an] explicit conflict with other laws and legal precedents and thus clearly violates an identifiable public policy." *Id.* (internal quotation marks and citations omitted). The "bias in favor of labor arbitration has resulted in the *rare application* of the public policy doctrine." *Maggio*, 702 F. Supp. at 991 (citations omitted) (emphasis added).

## V.     Application of Law to Facts

Local 3 and the NLRB argue that the arbitration award should not be enforced because, after the close of the arbitration proceedings but before the issuance of a final award, the NLRB found there was no valid CBA. In the absence of a valid CBA, it is argued, there was no enforceable arbitration clause and no valid no-strike obligation. Even if the parties were found to have agreed to arbitrate, Local 3 and the NLRB contend, the award is unenforceable as against public policy because it conflicts with a decision of the NLRB. *See* Hr'g Tr., Mar. 1, 2016. Both arguments are unpersuasive for the reasons set forth below.

### A. Valid Arbitration Agreement

Local 3 and the NLRB argue that the document executed by the parties on July 24, 2014 does not amount to a separate arbitration agreement because: (1) it was not included in the arbitration record; and (2) it reflects routine arbitration practice rather than an independent agreement to arbitrate. Local 3 also argues that the arbitrator's wording of the issue submitted by the parties to arbitration in his final award does not mirror the language of the narrow July 24, 2014 agreement executed by the parties and, therefore, the arbitrator exceeded his authority in deciding the dispute. *See, e.g.*, Hr'g Tr., Mar. 1, 2016, at 17:5-19:8, 35:9-12. These arguments are without merit. If the signing of the July 24, 2014 document represents, as Local 3 asserts, a "routine practice" without legal effect, then that practice ought to be reconsidered by the bar, for it is inconsistent with the law of contracts.

In *Piggly Wiggly Operators' Warehouse*, the Court of Appeals for the Fifth Circuit clarified that, in arbitrations brought pursuant to the grievance procedures included in a CBA,

> [t]he scope of an arbitrator's authority . . . is not always controlled by the collective bargaining agreement alone. *That agreement constitutes merely a promise to arbitrate*. Before arbitration can actually proceed, it is necessary for the parties to supplement the agreement to arbitrate by defining the issue to be submitted to the arbitrator and by explicitly giving him authority to act.

*Piggly Wiggly Operators' Warehouse*, 611 F.2d at 583 (internal citations omitted) (emphasis added).

The Fifth Circuit went on to clarify that,

> once the parties have gone beyond their promise to arbitrate and have actually submitted an issue to an arbiter, *we must look both to their contract and to the submission of the issue to the arbitrator to determine his authority*. If the parties enter into a submission agreement, *this later contract is the substitute for legal pleadings*; it *joins the issues between the parties and empowers the arbitrator to decide it.* . . . . Arbitration is a matter of contract, but the initial

contract to arbitrate may be modified by the submission agreement or grievance.

*Id*. at 584 (internal citations omitted) (emphasis added).

In the instant case, the parties specifically submitted the present dispute to arbitration through a limited separate and binding arbitration agreement. In that specific, narrow agreement, the parties expressly asked the arbitrator to decide the following questions: "Did the Union violate the no-strike provision of the collective bargaining agreement? If so, what shall be the remedy?" *See* Pl.'s Letter Attaching Copy of July 24, 2014 Arbitration Agreement, Feb. 22, 2016, ECF No. 94. The arbitrator referred to this narrow agreement in his decision of July 8, 2015:

> Nevertheless, my duty as an arbitrator, whose authority derives from the parties' mutual agreement to submit a particular dispute to me, is to render a decision pursuant to the arbitration clause in their collective bargaining agreement, *particularly as supplemented by their execution of a document signed at the arbitration hearing on July 24, 2014 explicitly and mutually conferring authority on me to issue a binding arbitration decision addressing the issue they submitted*:
>
> "Did the activities of the Union or bargaining unit employees on April 2, 2014 violate the prohibition against cessation or stoppage of work contained in the parties' collective bargaining agreement? If so, what shall be the remedy?"

Smith Decl., Ex. N, at 4-5. He again referenced the specific arbitration agreement in his November 30, 2014 final award: "[T]he parties executed an agreement to arbitrate on the day of the first hearing in this matter that explicitly submitted their dispute to me for binding arbitration." Smith Decl., Ex. A, at 5.

This narrow specific agreement was "the foundational document for the arbitration." *See* Hr'g Tr., Mar. 1, 2016, at 41:6-8 (court's statement). It was part of the record. The language of the July 24, 2014 agreement is substantively the same as the wording used by the arbitrator to

frame the dispute in his awards and it clearly evinces the parties' intention to arbitrate the narrow dispute at issue in this case. *See id.* at 19:9-13 and 43:18-23.

### B. Failure to Object to Arbitrator's Jurisdiction

Despite being aware of TWC's pending NLRB challenge concerning Local 3's failure to ratify the CBA, throughout the arbitration proceedings the union failed to raise any substantive objection to the arbitrator's authority to decide the dispute. *See* Smith Decl., Ex. J, Arbitration Hr'g Tr., Sept. 18, 2014, ECF No. 66-10 ("Ex. J"), at 532:6-14; *see also supra* Part II.D and Part II.K. It only challenged the arbitrator's authority after the arbitration record was closed and an unfavorable interim award had been issued against it. *See* Glennon Decl., Ex. F; Smith Decl., Ex. L. By agreeing to the arbitration and then actively participating in the proceedings, Local 3 waived its right to contest the arbitrator's jurisdiction. *See, e.g.*, *Application of Herman Miller, Inc.*, 1998 WL 193213 at *3; *Gvozdenovic*, 933 F.2d at 1105 (finding that appellants were bound by arbitrator's ruling because they voluntarily and without objection participated in arbitration by, *inter alia,* arguing their case before an arbitrator). As stated by the Court of Appeals for the Second Circuit:

> We find no ground for reversing the decision of the arbitrator. The parties voluntarily and by express agreement submitted to him the very issue which he had decided . . . . The Union is unhappy with the award because the arbitrator failed to find in its favor. It wants an opportunity to present its case again to another tribunal. We can perceive no reason for giving it this second opportunity, since there is no basis for finding error either in the arbitrator's conclusions or in the procedure by which he reached those conclusions.

*Metal Product Workers Union v. Torrington Co.*, 358 F.2d 103, 106 (2d Cir. 1966).

## C. Award Enforceable

An award is enforceable as "draw[ing] its essence" from the parties' agreement "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority . . . ." *Brooks Drug*, 956 F.2d at 25 (internal citations and quotation marks omitted).

In the instant case, the parties expressly submitted to binding arbitration the question of whether the union violated a no-strike provision in the CBA, as well as determination of an appropriate remedy. *See* Pl.'s Letter Attaching Copy of July 24, 2014 Arbitration Agreement, Feb. 22, 2016, ECF No. 94.

The arbitrator considered the CBA submitted to him by the parties in making his determination, in accordance with the parties' agreement:

> THE COURT: [The arbitrator] had an opportunity to look at the [CBA] which you say is no contract and I do not have to decide that and I do not. I do not decide whether those riders are part of it and what was carried over or anything at all with that.
>
> […]
>
> There is a paper which says collective bargaining agreement. Call it Exhibit X. Whether it would ultimately be found to have any power later with respect to riders or anything else is not the question. Does this paper now before [the arbitrator] have a no strike provision? Was it violated? What are the damages?
>
> […]
>
> He is an arbitrator and under the Supreme Court decisions, he is interpreting this paper [*i.e.*, the CBA,] and that is the way he interprets it and I am not going to second-guess him.

*See* Hr'g Tr., Mar. 1, 2016, at 28:19-30:16.

The arbitrator acted within the scope of the parties' narrow agreement when he issued his final award finding that Local 3 had violated the CBA's no-strike clause and awarding damages to TWC; he is not to be second-guessed.

After a full arbitration hearing where both sides were present and participated without objection, the arbitrator decided the explicit narrow issues submitted to him by the parties on July 24, 2014. He rested his decision on the authority conferred to him by the parties' specific arbitration agreement as well as on his interpretation of the obligations contained in the CBA.

Under the magic of the broad federal arbitration statute, an arbitration may be specifically authorized by the parties to decide whether a non-operative no-strike clause has been violated, and to assess damages. *For the purposes of the specific arbitration*, the no-strike clause in the CBA, as well as the CBA itself, could be assumed to be operative by the arbitrator. It is irrelevant that he was not authorized to also rely for jurisdiction on the general arbitration clause contained in the CBA. The specific arbitration agreement sufficed. Thus, giving full effect to the NLRB's finding with respect to non-ratification of the CBA, the arbitrator still had full jurisdiction to decide the case.

### D. Effect of NLRB Decision on Arbitrator Award

According to Local 3 and the NLRB, the arbitrator's decision is unenforceable as against public policy because it is based on a no-strike provision included in a CBA that the NLRB concluded was not operative. *See* Defs.' Opp'n Mem., at 16 (stating that "[t]he only issue is whether the award rendered by the arbitrator is in conflict with a strong public policy – here that would be the finding of the NLRB that there was no meeting of the minds and no CBA between the parties."). The NLRB argues that both the Board and the arbitrator were tasked with deciding whether a valid CBA existed, and the Board's finding should be given preclusive effect. *See* NLRB Mem., at 13-17.

Giving full effect to the NLRB's decision does not divest the arbitrator of jurisdiction. The separate, free-standing, valid, specific arbitration agreement expressly granted the arbitrator the

authority to decide the dispute "*as if there were a more general agreement not to strike*."  Hr'g

Tr., Mar. 1, 2016, at 26:19-22 (court's statement) (emphasis added).  The arbitrator was not tasked

with determining whether the CBA was valid.  Neither of the two relevant NLRB proceedings

have preclusive effect on the narrow, separate dispute that the parties in the instant case specifically

submitted to arbitration:

> THE COURT:  [T]here may be inconsistencies in the decisions,  but
> that is not a reason for my denying the enforceability of . . . *a
> separate decision on your part to go forward with an arbitration as
> if there were a contract, CBA, that you had signed.*
>
> […]
>
> [T]he fact that another adjudicatory authority is making a decision
> involving different personnel, different parties, four workers,
> different from the one that the arbitrator decided, it does not bother
> me at all.  I do not see any collateral estoppel problem.

*Id*. at 24:25-25:4, 25:23-26:2 (emphasis added).

The award of the arbitrator for money damages based on the specific agreement to arbitrate

does not violate public policy.  It can be enforced with no disrespect for the NLRB decision.  It

does not, however, apply to any future work stoppages, but only to the one stoppage of April 2,

2014.

## VI.    Final Decision of Arbitrator

In its final award of November 30, 2015, the arbitrator wrote:

> The undersigned Arbitrator, having been designated in accordance
> with the arbitration agreement entered into by the above-named
> parties, and having been duly sworn, and having duly heard the
> proofs and allegations of the parties, AWARDS as follows:
>
> Based on the evidence submitted, the Union did violate the
> prohibition against cessation or stoppage of work contained in the
> parties' collective bargaining agreement.  The Union is hereby
> explicitly directed not to engage in similar violations of the
> contractual "no-strike" provisions in the future.

> The total reimbursable damages arising from the Union's violation of the contractual no-strike clause, as discussed in my December 12, 2014 and July 8, 2015 Awards, which are expressly incorporated herein, and further discussed in the Opinion accompanying this Award, are $19,297.96, which amount shall be paid forthwith by the Union to the Company. I so find.

Smith Decl., Ex. A (underlining added).

The court orders stricken from the final arbitral award the following sentence: "The Union is hereby explicitly directed not to engage in similar violations of the contractual 'no-strike' provisions in the future." The issue of future work stoppages was not presented to the arbitrator by the parties' specific arbitration agreement of July 24, 2014. In addition, because the NLRB determined that there is no current CBA between the parties, this language concerning potential future actions by Local 3 or its members exceeds the arbitrator's authority. *See* 9 U.S.C. § 11(b) (providing a court with the authority to modify an arbitration award upon application of any party to the arbitration "[w]here the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted"). Section 11(b) of Title 9 of the United States Code implies that the court may act on its own motion where, in effect, but not in words, Local 3 is seeking to strike each aspect of the award as well as the whole award.

## VII. Conclusion

Plaintiff's motion for summary judgment is granted. The final arbitration award issued on November 30, 2015 is confirmed. Defendants' motion for summary judgment is denied. Remaining motions to dismiss filed by plaintiff and defendants prior to the issuance of a final arbitration award are dismissed without prejudice as moot.

Within ten days of this order, the parties shall submit a proposed final judgment confirming the arbitrator's award of $19,297.96, making it the judgment of the court. As noted in *infra* Part

VI, the portion of the award ordering no future work stoppages shall not be included in the judgment. If the parties cannot agree on the form of the judgment, each side shall submit a proposed judgment within ten days of this order.

No costs or disbursements are awarded. Local 3 was, in effect, supporting the view of the NLRB in opposing enforcement of the arbitral award. Case 14-CV-2437 shall be closed upon entry of the final judgment.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Date: March 16, 2016
Brooklyn, New York